**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TENNESSEE**
**KNOXVILLE DIVISION**

**WINSTON RAGON, JEB CARPENTER on behalf of themselves and all other persons similarly situated**

**Plaintiffs**

**v.**

**KNOX COUNTY, TENNESSEE; KNOX COUNTY, TENNESSEE PENSION AND RETIREMENT BOARD; SHERIFF TOM SPANGLER, in his official and individual Capacity for KNOX COUNTY, TENNESSEE; MAYOR AND BOARD CHAIRPERSON GLENN JACOBS, for KNOX COUNTY, TENNESSEE; CHRIS CALDWELL in his official capacity as CHIEF FINANCIAL OFFICER and CO-CHIEF OF STAFF FOR KNOX COUNTY, TENNESSEE and PROXY for MAYOR GLENN JACOBS, LARSEN JAY, KYLE WARD, RICHIE BEELER, TERRY HILL, DAMON RAWLS SHANE JACKSON as BOARD COMMISSIONERS; CHRIS SIMONS, JAMES SNOWDEN, ZAC FULLERTON and MATTHEW SCHLOSSHAN as BOARD MEMBERS; JENNIFER SCHROEDER BOARD EXECUTIVE DIRECTOR; SAVANNAH WILLETT, BOARD FINANCIAL AND PLAN ADMINISTRATOR and BOB CROSS, BOARD ACTUARY and PRESIDENT/DIRECTOR OF USI CONSULTING GROUP, ALLISON ROGERS, KNOX COUNTY, TENNESSEE DIRECTOR OF FINANCE, and JOHN/JANE DOES 1-4**

**Defendants**

**CASE NO. 3:25cv00552 CEA-JEM (CLASS ACTION)**

**Jury Trial Demanded**

---

# FIRST AMENDED CLASS ACTION COMPLAINT

---

## I. INTRODUCTION

**1.** This is a class action complaint brought by Winston Ragon and Jeb Carpenter for themselves and for other participants in the Knox County Uniformed Officers' Pension Plan (the "UOPP"), who were hired on or before December 31, 2014, and employed by Knox County as uniformed officers on June 29, 2023. Plaintiffs challenge the Knox County Retirement and Pension Board's amendment of Article 1, §1.19 of the UOPP (the "2023 Amendment"), as the Defendants' actions, in amending the UOPP violated applicable law and substantially impaired Plaintiff's retirement benefits.

**2.** Plaintiffs challenge Defendants' decision to breach the Knox County Charter and the UOPP, by adding subsection (j), which excluded from "Compensation" any incremental increase paid to a participant over a 3% per year increase in the base salary fixed by the Sheriff's Office, despite the fact that "Compensation" is defined in Article I, Section 1.19 as "the total salary paid by the Employer to the Employee for services performed for the Employer that is currently includible in gross income […]." Under the terms of the UOPP's 2023 Amendment, participants now receive benefits based on compensation that is less than the total salary paid by the Employer currently includible in gross income.

**3.** Plaintiffs likewise challenge the improper actuarial assumptions, formulas, adjustments, computations, accruals, withholdings, aggregation(s), and other funding calculations utilized ad relief upon by the Defendants in violation of applicable law, the UOPP, the Knox County Charter, and the United States and Tennessee Constitutions. The UOPP plan administrator, fiduciaries, Board members, trustees, and other state actors are not, and were not, free to choose their own methodologies and assumptions to fund pay raises two days before the start of Knox County's July 1 fiscal year by capping the UOPP participants' vested

retirement benefits. Defendants knew they were required to place a referendum on the ballot in order to amend the UOPP, and by refusing to do so violated the constitutional principles of separation of powers. As late as 2025, Defendants miscalculated Plaintiffs' retirement benefits.

**4.** Plaintiffs incorporate fully herein their Class Action Complaint filed November 12, 2025. Plaintiffs further respectfully request that this Court take judicial notice of all public records referenced herein under Rule 201 of the Federal Rules of Evidence. Plaintiffs respectfully submit that judicial notice of these public records is appropriate for facts not suject to reasonable dispute because said records are capable of accurate and ready determination from sources whose accuracy cannot reasonably be questioned., and as public records and government documents, including those available from reliable online sources, are generally considered not subject to reasonable dispute.

## II. JURISDICTION AND VENUE

**5.** This Court has original jurisdiction of all civil actions under 28 U.S. C. § 1331 and 1343 as this matter raises federal questions.

**6.** Venue is proper in the United States District Court, Eastern District of Tennessee, at Knoxville, pursuant to 28 U.S. C. § 1391(b)(1)(the district on which the any defendant resides) and/or 28 U.S.C. 1392(b)(2)(the district in which a substantial part of the events or omissions giving rise to the claim occurred).

**7.** This Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S. C. § 1367 because Plaintiffs' state law claims arise from the same set of factual events as the federal causes of actions.

## PARTIES

### A. Individual and Class Representative Plaintiffs

**8.** Plaintiff Winston Ragon ("Plaintiff Ragon") UOPP participant employed by Knox County, Tennessee on June 29, 2023, who is adversely affected by the 2023 Amendment. Plaintiff Ragon is an adult resident citizen of Knox County, Tennessee and opposed the 2023 Amendment.

**9.** Plaintiff Jeb Carpenter ("Plaintiff Carpenter) ") is a UOPP participant employed by Knox County, Tennessee on June 29, 2023, who is adversely affected by the 2023 Amendment Plaintiff Carpenter is an adult resident citizen of Knox County, Tennessee and opposed the 2023 Amendment.

**10.** Additional plaintiffs and class action members are identified in Section V, Class Action Allegations.

### B. Defendants

**11.** Defendant Knox County is a political subdivision of the State of Tennessee and a home rule county controlled by a charter ("Charter"). The Tennessee Constitution, art. XI, § 9, declares that Knox County has broad powers to amend its charter by referendum but does not permit any defendant, county official, ministerial official, government actor, actuary, commissioner, employee, trustee, fiduciary, designee, agent or employee to ignore their statutory duties. These defendants may only exercise those express or necessarily implied powers delegated to them by the Legislature in the Charter or under statutes. The provisions of the Charter are mandatory and must be obeyed by Knox County. Knox County is also

the Plaintiffs "Employer" under Article I, Section 1.45 of the UOPP. At all times relevant herein, Knox County officials, in various official and individual roles engaged in unconstitutionally impaired Plaintiffs' contractual rights under the UOPP and applicable law. Knox County knew or should have known that it was required to place a referendum ordinance on the ballot in order to properly amend the UOPP, and by refusing to do so violated the constitutional principles of separation of powers. Knox County was properly served via Mayor Glenn Jacobs at 400 Main St., Suite 615, Knoxville, TN 37902

**12.** Tom Spangler is the duly-elected Sheriff of Knox County, Tennessee ("Sheriff Spangler"). Upon information and belief, Sheriff Spangler is a participant in the UOPP and a ministerial officer. At all times relevant hereto and upon information and belief, Sheriff Spangler officially and unofficially used his dual roles and exceeded his authority by influencing other Defendants to retroactively cap Plaintiffs' retirement benefits to fund pay raises for correctional and patrol officers ranked captain or below by threat of a salary suit and as reflected in the Board's May 12, 2023 meeting minutes. Upon information and belief, and at a news conference on March 31, 2023, Sheriff Spangler announced his request for a 30% pay raise for correctional and patrol officers ranked captain and below. Sheriff Spangler likewise met with Defendant Schroeder, Defendant Schlosshan and the legal team "on May 18, 2023, and briefed [Sheriff Spangler] …on how the pension is funded" as reflected in the Board's May 22, 2023 meeting minutes. On or about June 2, 2023 Sheriff Spangler and Defendant Jacobs announced increases to deputy sheriff and deputy jailer salaries. Upon information and belief, Sheriff Spangler failed to provide file or submit any written instrument disclosing this fact or other conflicts of interest. Sheriff Spangler knew or should have known that a referendum ordinance on the ballot was required to properly amend the UOPP, and by

refusing to do so violated the constitutional principles of separation of powers. Plaintiffs respectfully submit that limited discovery on this issue is necessary for class action certification and will be fundamental in deciding whether to certify the class. Sheriff Spangler was properly served with process at the City County Building, 400 West Main Street Knoxville, Tennessee 37902.

**13.** Defendant Glenn Jacobs is the mayor of Knox County ("Mayor Jacobs") and the chairperson of the Knox County Retirement and Pension Board, holding multiple official ministerial roles none of which permit the exercise personal judgment and discretion in determining or impairing retirement benefits for other UOPP participants. .At all times relevant hereto and upon information and belief, Defendant Jacobs officially and unofficially used his dual roles to influence other Defendants to retroactively cap Plaintiffs' retirement benefits to fund pay raises for county employees. Upon information and belief, Defendant Jacobs proposed his budget for the 2023-24 fiscal year to the County Commission on May 8, 2023, proposing an 8% pay raise to county employees. On or about June 2, 2023 Sheriff Spangler and Defendant Jacobs announced increases to deputy sheriff and deputy jailer salaries. Upon information and belief, Defendant Jacobs and Sheriff Spangler and at least one other Board member, fiduciary, government actor or trustee met privately without public notice or open debate, prior to June 2, 2023 to cap UOPP benefits to fund increases in deputy sheriff, deputy jailer, and county employee salaries. Defendant Jacobs knew or should have known that a referendum ordinance placed on a ballot was required in order to properly amend the UOPP, and by refusing to do so violated the constitutional principles of separation of powers. Defendant Jacobs was properly served at 400 Main St., Suite 615, Knoxville, TN 37902.

Plaintiffs respectfully submit that limited discovery on this issue is necessary for class action certification and will be fundamental in deciding whether to certify the class.

**14.** Defendant Knox County Retirement and Pension Board ("Board") is an entity established by Section 7.03 of the Charter and charged with administering the UOPP under Article II, Section 2.01 of the UOPP. Members of the Board are also ministerial officers and are considered fiduciaries, administrators and trustees under the terms of the UOPP, and are not permitted to exercise personal judgment and discretion in administering the UOPP. The Board knew or should have known that a referendum ordinance on the ballot was required to properly amend the UOPP, and by refusing to do so violated the constitutional principles of separation of powers. At all times relevant hereto and upon information and belief, the Board used its consultants, trustees and fiduciaries and other individuals as functional equivalents of the Board to perform government and public functions prohibited by law. The Board acquiesced to demands and influence of other Defendants to retroactively cap Plaintiffs' retirement benefits to fund pay raises for correctional and patrol officers and county employees, in violation of the Charter, UOPP and applicable law. Per the Board's meeting minutes of March 27, 2023, Defendants Jay, Beeler, Ward, Hill, Simons, Fullerton, Snowden, Schlossan, Cross, and Schroeder were trained by legal counsel Trotto as to what constitutes a conflict of interest, how to act impartially, and the disclosure of conflicts of interest. The Board's March 27, 2023 meeting minutes also reflect Defendant Schroeder, Defendant Schlossan and the legal team likewise smet with Sheriff Spangler "on May 18, 2023, and briefed [Sheriff Spangler] …on how the pension is funded" as reflected in the Board's May 22, 2023 meeting minutes. At this same meeting, the Board voted to approve a funding policy for the UOPP, despite the agenda reflecting that the Defendant Cross would report on the UOPP funding policy. See May 22, 2023 Agenda, Exhibit **27** The agenda and meeting

minutes of this date reflect that Commissioner Ward voted to approve the funding policy *prior to* the Board's annual due diligence meeting and contrary to the Public Employee Defined Benefit Act of 2014 ("PEDBA"). Upon information and belief, some of the Board members failed to provide file or submit any written instrument disclosing conflicts of interest. Due to previous settled litigation and advice of Board counsel, members of the Board knew or should have known that a referendum ordinance on the ballot was required to properly amend the UOPP, and by refusing to do so violated the constitutional principles of separation of powers. Plaintiffs respectfully submit that limited discovery on this issue is necessary for class action certification and will be fundamental in deciding whether to certify the class. The Knox County Retirement and Pension Board was properly served at City-County Building, 400 Main Street, Suite 371, Knoxville, TN 37902, c/o its chairman Glenn Jacobs.

**15.** Defendant Chris Caldwell ("Caldwell") is the Knox County, Tennessee's Chief Financial Officer and Co-Chief of Staff, and upon information and belief is a member of the Board's document committee, a member of the Board's investment and actuarial committee, and the Mayor's proxy and chairperson present at the Board's June 26, 2023 regular meeting and the June 29, 2023 special meeting. Upon information and belief, he is a ministerial officer who is prohibited from exercising personal judgment and discretion in determining retirement benefits for UOPP participants that is contrary to applicable law, the Knox County Charter, and the UOPP plan documents. Like Defendants Jacobs and Sheriff Spangler, Defendant Caldwell holds multiple roles within Knox County. Defendant Caldwell presided over the Board's May 12, 2023 special meeting, and suggested that "the Board select the options they are most interested in an allow Ms. Schroeder to put together information with the actuary and counsel on how those options would be administered…" Defendant Caldwell

also advised Defendant Cross that "in this salary suit process the Knox County law department would recuse themselves due to obvious conflict of interest issues…" When a Board Commissioner sought more hard data and to explore fair options before making a decision to amend the UOPP, Defendant Caldwell replied that "type of change would have to be placed on the ballot for voter approval."[1] Due to previous settled litigation and advice of Board counsel, Defendant Caldwell knew that a referendum ordinance on the ballot was required to properly amend the UOPP, and by refusing to do so violated the constitutional principles of separation of powers. Plaintiffs respectfully submit that limited discovery on this issue is necessary for class action certification and will be fundamental in deciding whether to certify the class. Defendant Caldwell was properly served at the City-County Building, 400 Main Street, Suite 371, Knoxville, TN 37902, c/o Glenn Jacobs.

**16.** Larsen Jay ("Commissioner Jay"), Kyle Ward ("Commissioner Ward") and Terry Hill ("Commissioner Hill") are Board Commissioners (collectively "Board Commissioners") present at the at the Board's June 26, 2023 regular meeting and the Board's June 29, 2023 special meeting and voted in favor of 2023 Amendment. These board members are also ministerial officers, fiduciaries, administrators and trustees under the terms of the UOPP, and are not permitted to exercise personal judgment and discretion in administering the UOPP. They knew or should have known that a referendum ordinance on the ballot was required to properly amend the UOPP, and by refusing to do so violated the constitutional principles of separation of powers. Per the Board's meeting minutes of March 27, 2023, Defendants Jay, Ward and Hill were trained by legal counsel Trotto as to what

[1] The Special Called Meeting Agenda of May 12, 2023, only reflects "Discussion of the UOPP" and nothing more.

constitutes a conflict of interest, how to act impartially, and the disclosure of conflicts of interest. These individuals were properly served at the City-County Building, 400 Main Street, Suite 371, Knoxville, TN 37902, c/o its chairman Glenn Jacobs. Plaintiffs respectfully submit that limited discovery on this issue is necessary for class action certification and will be fundamental in deciding whether to certify the class.

**17.** Richie Beeler was a Board Commissioner and secretary ("Commissioner Beeler") absent from the Board's June 26, 2023 regular meeting and the Board's June 29, 2023 special meeting. Per the Board's meeting minutes of March 27, 2023, Defendant Beeler was trained by legal counsel Trotto as to what constitutes a conflict of interest, how to act impartially, and the disclosure of conflicts of interest. Commissioner Beeler was properly served at 6024 Ridgeview Road, Knoxville, Tennessee 37918. Plaintiffs respectfully submit that limited discovery on this issue is necessary for class action certification and will be fundamental in deciding whether to certify the class.

**18.** Shane Jackson is a Board Commissioner ("Commissioner Jackson") absent from the Board's June 26, 2023 regular meeting and the Board's June 29, 2023 special meeting. Commissioner Jackson was properly served at the City-County Building, 400 Main Street, Suite 371, Knoxville, TN 37902, c/o its chairman Glenn Jacobs. Upon information and belief, he is a ministerial officer who is prohibited from exercising personal judgment and discretion in determining retirement benefits for UOPP participants that is contrary to applicable law, the Knox County Charter, and the UOPP plan documents. Plaintiffs respectfully submit that limited discovery on this issue is necessary for class action certification and will be fundamental in deciding whether to certify the class.

**19.** Damon Rawls is a Board Commissioner ("Commissioner Rawls") who was absent from the Board's June 26, 2023 regular meeting and the Board's June 29, 2023 special meeting. Upon information and belief, he is a ministerial officer who is prohibited from exercising personal judgment and discretion in determining retirement benefits for UOPP participants that is contrary to applicable law, the Knox County Charter, and the UOPP plan documents. Plaintiffs respectfully submit that limited discovery on this issue is necessary for class action certification and will be fundamental in deciding whether to certify the class. Commissioner Rawls was properly served at the City-County Building, 400 Main Street, Suite 371, Knoxville, TN 37902, c/o Glenn Jacobs.

**20.** Chris Simons ("Member Simons") was a Board member who voted in favor of the 2023 Amendment. Chris Simons is also a CPA and Director of Accounting and Business Servies at Knox County Schools. Member Simons, like other Defendants, occupies dual roles. Upon information and belief, he is a ministerial officer who is prohibited from exercising personal judgment and discretion in determining retirement benefits for UOPP participants that is contrary to applicable law, the Knox County Charter, and the UOPP plan documents. He knew or should have known that a referendum ordinance on the ballot was required to properly amend the UOPP, and by refusing to do so violated the constitutional principles of separation of powers. . Plaintiffs respectfully submit that limited discovery on this issue is necessary for class action certification and will be fundamental in deciding whether to certify the class. Member Simons was properly served at City-County Building, 400 Main Street, Suite 371, Knoxville, TN 37902 or at his residence of 12710 Daisywood Drive, Knoxville, Tennessee 37932.

**21.** Jim Snowden ("Member Snowden"), is a Board member representing County Active Employees and voted in favor of the 2023 Amendment. Upon information and

belief, he is a ministerial officer who is prohibited from exercising personal judgment and discretion in determining retirement benefits for UOPP participants that is contrary to applicable law, the Knox County Charter, and the UOPP plan documents. Per the Board's meeting minutes of March 27, 2023, Defendant Snowden was trained by legal counsel Trotto as to what constitutes a conflict of interest, how to act impartially, and the disclosure of conflicts of interest. He knew or should have known that a referendum ordinance on the ballot was required to properly amend the UOPP, and by refusing to do so violated the constitutional principles of separation of powers. Plaintiffs respectfully submit that limited discovery on this issue is necessary for class action certification and will be fundamental in deciding whether to certify the class. Member Snowden was properly served at City-County Building, 400 Main Street, Suite 371, Knoxville, TN 37902, c/o its chairman Glenn Jacobs.

**22.** Zac Fullerton ("Member Fullerton"), is a Board member representing County Active Employees and voted in favor of the 2023 Amendment. Upon information and belief. he is a ministerial officer who is prohibited from exercising personal judgment and discretion in determining retirement benefits for UOPP participants that is contrary to applicable law, the Knox County Charter, and the UOPP plan documents. Per the Board's meeting minutes of March 27, 2023, Defendant Fullerton was trained by legal counsel Trotto as to what constitutes a conflict of interest, how to act impartially, and the disclosure of conflicts of interest. He knew or should have known that a referendum ordinance on the ballot was required to properly amend the UOPP, and by refusing to do so violated the constitutional principles of separation of powers. Plaintiffs respectfully submit that limited discovery on this issue is necessary for class action certification and will be fundamental in deciding whether to

certify the class. Member Fullerton was properly served at City-County Building, 400 Main Street, Suite 371, Knoxville, TN 37902, c/o its chairman Glenn Jacobs.

**23.** Matthew Schlossman ("Member Schlossman") is a Board member representing the Knox County, Tennessee Sheriff's Office, who did not vote on the 2023 Amendment. Upon information and belief, he is a ministerial officer who is prohibited from exercising personal judgment and discretion in determining retirement benefits for UOPP participants that is contrary to applicable law, the Knox County Charter, and the UOPP plan documents. Per the Board's meeting minutes of March 27, 2023, Defendant Schlossan was trained by legal counsel Trotto as to what constitutes a conflict of interest, how to act impartially, and the disclosure of conflicts of interest. He knew or should have known that a referendum ordinance on the ballot was required to properly amend the UOPP, and by refusing to do so violated the constitutional principles of separation of powers. Plaintiffs respectfully submit that limited discovery on this issue is necessary for class action certification and will be fundamental in deciding whether to certify the class. Schlossman was properly served at City-County Building, 400 Main Street, Suite 371, Knoxville, TN 37902, c/o its chairman Glenn Jacobs.

**24.** Jennifer Schroeder is the Executive Director for the Board. Upon information and belief, she is a ministerial officer who is prohibited from exercising personal judgment and discretion in determining retirement benefits for UOPP participants that is contrary to applicable law, the Knox County Charter, and the UOPP plan documents. Per the Board's meeting minutes of March 27, 2023, Defendant Schroeder was trained by legal counsel Trotto as to what constitutes a conflict of interest, how to act impartially, and the disclosure of conflicts of interest. She knew or should have known that a referendum ordinance on the ballot

was required to properly amend the UOPP, and by refusing to do so violated the constitutional principles of separation of powers. Plaintiffs respectfully submit that limited discovery on this issue is necessary for class action certification and will be fundamental in deciding whether to certify the class. Defendant Schroeder was properly served may be served at the City-County Building, 400 Main Street, Suite 371, Knoxville, TN 37902, c/o its chairman Glenn Jacobs.

**25.** Savannah Willett is the Financial and Plan Administrator for the Board. Upon information and belief, she is a ministerial officer who is prohibited from exercising personal judgment and discretion in determining retirement benefits for UOPP participants that is contrary to applicable law, the Knox County Charter, and the UOPP plan documents. She knew or should have known that a referendum ordinance on the ballot was required to properly amend the UOPP, and by refusing to do so violated the constitutional principles of separation of powers. Plaintiffs respectfully submit that limited discovery on this issue is necessary for class action certification and will be fundamental in deciding whether to certify the class. She was properly served at City-County Building, 400 Main Street, Suite 371, Knoxville, TN 37902, c/o its chairman Glenn Jacobs

**26.** Bob Cross is an actuary utilized by the Board, the President of the central and southern regions of USI Consulting Group, and a state actor. Plaintiffs, via open records requests, have requested production of consulting agreements and contracts utilized by the Board, including the Board's actuary. As the Board's actuary, Defendant Cross, during all times relevant herein, acted and functioned as the functional equivalent of the Board. Defendant Cross is also a record keeper for the Board, who improperly made actuarial assumptions, formulas, adjustments, computations, accruals, withholding, aggregation(s), and other funding calculations utilized by the Defendants to improperly amend the UOPP in violation of

applicable law, the UOPP, the Knox County Charter, and the United States and Tennessee Constitutions. Per the Board's meeting minutes of March 27, 2023, Defendant Cross was trained by legal counsel Trotto as to what constitutes a conflict of interest, how to act impartially, and the disclosure of conflicts of interest. He knew or should have known that a referendum ordinance on the ballot was required to properly amend the UOPP, and by refusing to do so violated the constitutional principles of separation of powers. Defendant Cross was not permitted to utilize actuarial methodologies to support the Board's decision in violation of PEDBA and other laws. Defendant Cross presented his actuarial report and revised actuarial valuation for the UOPP out of order at the June 26, 2023 Board meeting, *after* the Board approved the First Reading of the Plan Amendment. Per the May 12, 2023 special meeting minutes, the funding ratio for the UOPP was hovering around 60% and increased after 2027 due to actuarial assumptions. The improper actuarial formulas and calculations continue to affect Plaintiffs salaries and retirement benefits. Defendant Cross likewise knew or should have known that the Board was required to place a referendum ordinance on the ballot in order to amend the UOPP, and by refusing to do so violated the constitutional principles of separation of powers. Plaintiffs respectfully submit that limited discovery on this issue is necessary for class action certification and will be fundamental in deciding whether to certify the class. .Mr. Cross was properly served at his place of employment located at 900 South Gay Street, Suite 1796, Knoxville, Tennessee.

**27.** Allison Rogers is the Knox County, Tennessee Director of Finance, a trustee and ministerial officer responsible for payroll calculations and other withholding for Knox County employees and UOPP participants. Allison Rogers, prior to the events alleged herein, filed litigation seeking to participate in the UOPP. As a ministerial officer, she is prohibited

from exercising personal judgment and discretion in determining retirement benefits for UOPP participants that is contrary to applicable law, the Knox County Charter, and the UOPP plan documents. Upon information and belief, and prior to June 26, 2023 First Reading of the Amendment, Ms. Rogers incorrectly advised Plaintiff Ragon of the UOPP contributions and withholdings. As late as 2025 or earlier 2026, Knox County withheld UOPP contributions from Plaintiffs' longevity pay, in service bonus, educational deferential pay and overtime. Defendant Rogers likewise knew or should have known that the Board was required to place a referendum ordinance on the ballot in order to amend the UOPP, and was thereby complicit in the constitutional principles of separation of powers. Plaintiffs respectfully submit that limited discovery on this issue is necessary for class action certification and will be fundamental in deciding whether to certify the class. Plaintiffs further submit that Defendant Rogers may be served at her place of employment at the City-County Building, 400 Main Street, Suite 371, Knoxville, TN 37902 or at any other place where she may be found, and request that the attached summons be issued.

**28.** John/Jane Does 1-4 are individuals that participated in secret meetings and/or speech with other named Defendants that influenced passage of the UOPP 2023 Amendment identified *supra*, whose identities are not yet known. Plaintiffs respectfully submit that limited discovery on this issue is necessary for class action certification and will be fundamental in deciding whether to certify the class.

## III. STATEMENT OF FACTS

**29.** The voters of Knox County, Tennessee, approved the creation of a defined benefit plan to provide pension benefits for the participating officers pursuant to the Charter.

In September of 2006, the Knox County Commission approved Ordinance No. O-06-4-101, which placed before the voters of a Knox County an amendment to the Charter. The proposed amendment would establish a defined benefit pension plan for uniformed officers, known as the UOPP. Ordinance No. O-06-4-101 contained a formula for calculating retirement benefits based upon the UOPP participant's salary. Ordinance No. O-06-4-101 and the Ballot for the November 7, 2006 election are available as a public record, and these documents are adopted and incorporated as set forth fully herein. The UOPP came into effect on July 1, 2007 ("2007 UOPP"). The 2007 UOPP, unlike the 2023 Amendment, was approved by Knox County voters, the Board and later by Resolution R-07-2-902 of the Knox County Commission. Plaintiffs elected to participate in this defined benefit pension plan based on their salary. relying, in part, on the contractual terms determining their pension payments being based on their full pay each year with no restrictions. The Plaintiffs earned this and other rights through decades of employment with the County, and on reliance of the UOPP contract provided to them. In the instant matter, there was no ordinance or charter amendment placed on a ballot approved by Knox County, Tennessee voters. Instead, the Defendants amended the UOPP in a 48 hour period to meet the July 1 fiscal year start.

**30.** Like the 2006 Charter amendment, the UOPP was closed to future participants on December 31, 2013, via a 2012 charter amendment. *See* Nov. 26, 2012 Knox County Elections Commission Certification of 7 Amendments, Exhibit 1; see also July 9, 2019 Board General Counsel Letter, Exhibit 2. As set forth in the certified Amendment and in Article VII, § 7.05 of the County Charter:

> The Retirement Board is hereby authorized and directed to establish, maintain and administer one or more plans of the system as separate, tax qualified plans and trusts, known and designated collectively as the Uniformed Officers Plan (hereinafter referred to as the Officers Plan") for. sworn officers regularly employed by-the Sheriffs

> Department. The Officers Plan shall provide distinct benefits for officers who participated prior to January 1, 2014 ("2007 Officers Plan") and those employed ·thereafter ("2014 Officers Plan"), as provided in this Section 7.05…
>
> A. The 2007 Officers Plan, adopted effective July 1, 2007, shall be closed to enrollment of officers hired on or after January 1, 2014. The 2007 Officers Plan shall remain in effect for any officers who participated in it prior to January 1, 2014 so long as such officer remains continuously employed as an officer. A participant in the 2007 Officers Plan who is not vested on January 1, 2014,·but who thereafter completes five years of service under that Plan shall be entitled to benefits under the 2007 Officers Plan…
>
> B. The actuary for the system shall annually compute and report normal and past service contributions for the Officers Plan, which report shall be considered by the Retirement Board and passed with the Board's recommendation to the Commission for acceptance and funding approval. **The Officers Plan shall be actuarially funded.**
>
> C. The Officers Plan shall be administered by the Retirement Board as otherwise provided in this Article 7. The Retirement Board may amend the Officers Plan from time to time **under the authority of Section 7.04(E), so long as any such amendment is consistent with the terms of this Section**.

See Exhibits 1 and 2 (emphasis added). Article VII, §4.04(b) states that "the employee contribution benefit **shall be fully vested at all times**."[1]

**31.** Article VII, § 7.02(C) of the Charter prohibits the Board from adopting "a policy, plan, plan amendment or administrative action unless it is actuarially sound and is actuarially funded at the time of adoption." Section 7.04(E) provides that

> The Retirement Board shall not have the power or authority to adopt or approve any plan or plan amendment, or take any other action, which thereby would increase the funding or financial obligations of the County either at the time of the action or in the future without notification to and express consent and funding from the Commission by resolution. The intent of this

> provision is to restrict the power of the Retirement Board so that all plans, benefits, annuities or pensions are actuarially sound and actuarially funded from *the date of their creation*.

Emphasis added. *See* Exhibits 1, 2 and 3. The Board is therefore charged with the responsibility of administering the UOPP for the exclusive benefit of the participants and their survivors and is subject to the terms of the UOPP.

**32.** The plain language of the Charter Article VII, §7.04(H) likewise provides that

> All benefits payable to participants, retired participants, survivors, beneficiaries or otherwise, as lawfully adopted in the provisions of the system, shall continue unimpaired as provided therein and such benefits shall be an obligation of the Retirement Board and of Knox County.

Accordingly, the Board is required to pay all benefits owed to participants, retired participants, and others, without impairment.

**33.** Under the UOPP, participants receive a defined benefit for life in the form of a straight life annuity. The straight life annuity is a guaranteed future benefit is based upon a participant's highest average salary over a two 12-month periods, whether or not consecutive.

**34.** UOPP participant's compensation is defined by Article I, Sec. 1.19 of the contract which defines "Compensation" as the total salary paid by the Employer to the Employee for services performed for the Employer that is currently includible in gross income…." *See* May 1, 2020, Restatement of the Knox County Uniformed Officers Pension Plan, Exhibit 4.

**35.** The stated intention in both the May 1, 2020 and January 1, 2024 Restatement of the UOPP is

> not to make changes or amendments to the Plan until the financial effect of any proposed change on the actuarial soundness of the Plan has been determined **on the basis of such competent actuarial, legal and other advice as the Board shall assemble and such information has been made available to all interested parties**…

See May 1, 2020 and January 1, 2024 Restatement, p. 1, Exhibits 4 and 5.

**36.** Article VII of the UOPP contract, entitled Amendment, provides that:

> …that no amendment shall have the effect of reverting in the Employer any portion of such Funds; that no amendment, unless it is necessary to meet the requirements of any state or federal law, shall operate to deprive any Participants of any benefits, to the extent they are funded. For clarity, in no event shall an amendment to the pension provisions of the charter of the City of Knoxville be deemed to amend this Plan…**Consistent with the terms of Section 7.05 of the Charter, any amendment or termination of the Plan may be adopted by the Board after two readings, but only if an actuarial determination by the Actuary of its effect on the soundness of the System's design of benefits as well as its effect on the cost of the Plan has been disclosed in a prior public meeting. Notice of such hearing shall be published one day in each of three consecutive weeks, commencing at least 21 days prior to the date of the first reading, in a daily or weekly newspaper of wide circulation in Knox County**

See May 1, 2020 Restatement, p. 62, Exhibit 4 (emphasis supplied).

**37.** Section 4.01 Payment of Contribution requires the Plan to be funded on an actuarially sound basis and the Employer "shall pay" the benefits under the Plan determined by accepted actuarial methods and assumptions. Section 4.02 identifies the actuarial methods, requiring an actuary to use such actuarially sound methods and assumptions adopted by the Board on the recommendation of the Actuary as will reasonably reflect the cost of the benefits. Additionally, any amendments to the UOPP must be made consistent with Section 7.05 of the Charter, and only after two readings and after an actuarial determination by the Actuary of the effect of the change on the soundness of the UOPP design and benefits as well as the effect on the cost of the Plan. The actuarial determination must be disclosed in a *prior public meeting*.

**38.** On May 22, 2014, the Public Employee Defined Benefit Act of 2014 ("PEDBA"), Tenn. Code Ann. § 9-3-502 *et seq.* was enacted and applies to all political subdivisions that provide defined benefit plans not administered by the Tennessee consolidated retirement system. Section 9-3-503 of the PEDBA contains definitions that include actuarially determined contribution or "ADC", and unfunded accrued liability. Section 9-3-506 of the Act states, in part, that

> …political subdivision employees hired on or after May 22, 2014, the political subdivision may freeze, suspend or modify benefits, employee contributions, plan terms and design on a prospective basis… [and] does not affect any judicial precedents or statutory law as they apply to employees who were employed prior to May 22, 2014;
>
> …For any pension plan that is funded below sixty percent (60%), the political subdivision shall not establish a benefit enhancement until it has received written approval by the state treasurer. For the purposes of this subdivision (a)(2), "benefit enhancement" means any change in member benefits, benefit structure, or benefit formula provided by a political subdivision relative to its pension plan that, according to the political subdivision's actuary, will or is estimated to permanently, temporarily, or intermittently increase either the employer or employee contributions or the liabilities of the pension plan…

**39.** The Board held a public meeting on October 23, 2017 and where counsel for the Knox County taxpayers presented to the Board. See Transcript Excerpt, Exhibit **28** hereto. Upon information and belief, Defendants Caldwell and other Defendants were present. Counsel for the Knox County taxpayers, Mr. Reed, stated that the Knox County Charter is very specific about the way the Board had approve changes to the UOPP, noting that the "referendum that approved the UOPP was very specific," and "used the term salary."

**40.** Following this, and on July 9, 2019, Counsel for the Retirement Board sent correspondence regarding a demand for cessation of payment of UOPP benefits. *See* Exhibit 2. Per Board Counsel's letter

> …for your edification, in 2012 Knox County voters adopted a charter amendment closing UOPP enrollment to new officers…**By voting for the 2012 amendment to the Knox County Charter, the voters Knox County adopted and ratified the UOPP, as it has been previously interpreted, for the officers enrolled prior to January 1, 2014**…Based on **the fact that the UOPP and its method of administration are codified in the Knox County Charter…there is no authority for the Pension Board to change its computation of vested and accrued UOPP benefits** and therefore no basis for cessation of its current administration. **To do so would violate the due process rights of the UOPP participants and retirees**…

*See* Exhibit 2 (emphasis supplied); see also Exhibit 35, July 29, 2016 Retirement Board Memo, Exhibit 35.

**41.** The UOPP Summary Plan Description, effective January 2022, Exhibit 6, and July 2023, Exhibit 7 state that the Board " intends to maintain the Plan indefinitely, it reserves the right to amend or terminate the Plan and Trust in accordance with their provisions and applicable law at any time.," and defines Compensation as "The employee's annual **salary**, including bonus, and longevity pay..."(emphasis supplied).

**42.** The Board met in regular session on March 27, 2023. See March 27, 2023 Meeting minutes, Exhibit 8. Per the Executive Director's report and valuation update, the valuations were "nearing completion…USI will present at the April Board meeting…the presentation will contain a snapshot of the plans along with demographics, calculations and projections in accordance with assumptions made." See Exhibit 8.

**43.** At a news conference on or about March 31, 2023, Sheriff Spangler requested a 30% pay raise for correctional and patrol officers ranked captain or below.

**44.** On April 25, 2023, Tenn. Code Ann. § 8-44-110 that controls public accessibility of legislative body meetings was amended to require:

> At least forty-eight (48) hours prior to a meeting, a local government legislative body shall make available to the public, at no charge, the agenda for the upcoming meeting in a place accessible to the public. The agenda must reasonably describe the matters to be deliberated or acted upon during the public meeting.
>
> A local government legislative body may deliberate or act upon matters not listed on the agenda if the local government legislative body follows its bylaws or properly adopted rules and procedures and complies with all other applicable state laws.
>
> A local government legislative body shall not circumvent the spirit or requirements of this section by withholding items from an agenda for the purpose of avoiding public disclosure of business to be considered by the legislative body.

Tennessee Code Ann. § 8-44-102(c) and (d) state that "meeting" means the convening of a governing body of a public body for which a quorum is required in order to make a decision or to deliberate toward a decision on any matter. These statutes prohibit chance meetings, informal assemblages, or electronic communication to be used to decide or deliberate public business in circumvention of the spirit or requirements of this part. The intent of these laws is that any meeting relating to any matter on which foreseeable action will be taken occur openly and publicly, and are construed most favorably to the public and applies to every meeting of a governing body except where the statute, on its face, excludes its application.

**45.** Upon information and belief, and on or about May 8, 2023, Defendant Jacobs proposed his budget for the 2023-24 fiscal year to the County Commission. Defendant Jacobs budget proposed an 8% pay raise to county employees.

**46.** The Board called a special meeting for May 12, 2023. The posted Special Called Meeting Agenda, reads, in part, as follows:

**SPECIAL CALLED MEETING AGENDA**

The **KNOX COUNTY RETIREMENT AND PENSION BOARD** will meet on **Friday , May 12, 2023, at 10:30 A.M.**, in **ROOM 640**, City-County Building, Knoxville, Tennessee.

1. **CALL TO ORDER**
2. **CONSIDERATION OF DEFINED CONTRIBUTION INSTITUTIONAL SHARES COMMUNICATION**
3. **DISCUSSION OF THE UNIFORM OFFICERS PENSION PLAN**
4. **ADJOURNMENT**

*See* Exhibit 9. The agenda did not reasonably describe the matters to be deliberated or acted upon during the public meeting and the Board deliberated and acted upon matters not listed on the agenda without following its bylaws or properly adopted rules and procedures. The special called meeting agenda did not comply with Article VII, entitled "Amendment" of the UOPP plan documents and were contrary to the terms of Section 7.05 of the Charter. Per the UOPP Plan documents, [Exhibits 4 and 5], changes or amendments to the Plan cannot occur "until the financial effect of any proposed change on the actuarial soundness of the Plan has been determined [and] such information has been made available to all interested parties…"(emphasis supplied). Additionally, per Article VII, any amendment or termination of the Plan may be adopted by the Board after two readings, but only if an actuarial determination by the Board's actuary [Defendant Cross] of its effect on the soundness of the System's design of benefits as well as its effect on the cost of the Plan has been disclosed in a prior public meeting…" Exhibits 4 and 5 (emphasis supplied).

**47.** At the special session on May 12, 2023, Defendant Schroeder reported that "at the last board meeting the members requested a special called meeting to discuss how the filing of

a salary suit by the Sheriff would affect the UOPP and its funding." *See* May 12, 2023 executed meeting minutes, Exhibit 10. Defendant Cross stated that 60% was an important threshold that is examined by the State, and that funding ratio for the UOPP is "hovering around 60% and then increases after 2027 due to actuarial assumptions." *See* May 12, 2023 executed meeting minutes, Exhibit 9. During the Board's meeting, the Board was presented with three (3) presentations: (1) USI's "Review of Benefits At Retirement," (2) USI's Review of 20-Year Projections" and (3) "UOPP Cost and Options." Slide 5 of the "UOPP Cost and Options" presentation states that "UOPP to "remain in effect' for then current Officers as of 12/31/2013." Importantly, Slide 8 of this presentation reflects that the funded status of the UOPP as of January 1, 2023 is 63%. *See* May 12, 2023 executed meeting minutes, Exhibit 10. Upon information and belief, these presentations were not provided to members of the public who attended this meeting, and the Board failed to comply with the Charter and the UOPP Plan documents. See Exhibits 4 and 5. The Board did not notify nor make available information to all interested parties that the financial effects of the 2023 amendment or on the determination of the actuarial soundness of the Plan.

**48.** The Board met in regular session on May 22, 2023. The May 22, 2023 agenda, did not reasonably describe the matters to be deliberated or acted upon during the public meeting and the Board deliberated and acted upon matters not listed on the agenda without following its bylaws or properly adopted rules and procedures. The Board's actions likewise failed to comply with federal and state law. See also May 22, 2023 executed meeting minutes, Exhibit 11. The Board did not notify nor make available information to all interested parties that the financial effects of the 2023 amendment or on the determination of the actuarial soundness of the Plan as required.

**49.** Defendant Schroeder reported on the special called Board meeting held May 12, 2023, and that the Board asked to be provided with additional information on the different options to be explored to maintain or enhance the fiscal stability of the UOPP. *See* May 22, 2023

executed meeting minutes, Exhibit 11. Defendant Schroeder also stated that the legal team, Mr. Schlosshan and herself "met with the Sheriff on May 18th and briefed him on the date and how the pension is funded." Defendant Schroeder also stated that "the UOPP pension plan is stable as long as the County funds the ADC." Defendant Cross stated "[c]urrently the UOPP is actuarially sound." *See* May 22, 2023 executed meeting minutes, Exhibit The agenda did not reasonably describe the matters to be deliberated or acted upon during the public meeting and the Board deliberated and acted upon matters not listed on the agenda without following its bylaws or properly adopted rules and procedures. The Board did not notify nor make available information to all interested parties that included all UOPP participants of the financial effects of the 2023 amendment or on the determination of the actuarial soundness of the Plan.

**50.** On or about June 2, 2023, Knox County Mayor Glenn Jacobs and Knox County Sheriff Tom Spangler announced increases in deputy Sheriff and deputy jailer salaries. Knox County Sheriff deputies ranked captain or below received 12% increases to compensation, Knox County Captains received 5% increases to compensation, and corrections officers received 27% increases to compensation.

**51.** Notice was thereafter published by the Board in the Knoxville News Sentinel on June 4, 2023, stating that

> Notice is hereby given of a Public Meeting of the Knox County Retirement & Pension Board to be held on Monday, June 26, 2023, at 3:00 pm in Room 575, City County Building, Knoxville, Tennessee. The Board will consider the amendment and restatement of the Knox County Uniform Officers Pension Plan (UOPP). The Public Hearing on June 26, 2023, will be the first of two readings for the amendment. Richie Beeler, Secretary

See June 4, 2023 Public Notice, Exhibit 12.

**52.** On June 11, 2023, the Board published a second Notice stating that:

> Notice is hereby given of a Public Meeting of the Knox County Retirement & Pension Board to be held on Monday, June 26,2023, at 3:00 pm in Room 575, City County Building, Knoxville, Tennessee. The Board will consider the amendment and restatement of the Knox County Uniform Officers Pension Plan (UOPP). The Public Hearing on June 26, 2023, will be the first of two readings for the amendment. Richie Beeler, Secretary

See June 11, 2023 Public Notice, Exhibit 13.

**53.** A third notice was published by the Board on June 18, 2023, stating that:

> Notice is hereby given of a Public Meeting of the Knox County Retirement & Pension Board to be held on Monday, June 26,2023, at 3:00 pm in Room 575, City County Building, Knoxville, Tennessee. The Board will consider the amendment and restatement of the Knox County Uniform Officers Pension Plan (UOPP). The Public Hearing on June 26, 2023, will be the first of two readings for the amendment. Richie Beeler, Secretary

See June 18, 2023 Public Notice, Exhibit 14. The notices of publication of the readings of the amendments were void as the Board did not notify nor make available information to all interested parties that the financial effects of the 2023 amendment or on the determination of the actuarial soundness of the Plan at a prior meeting.

**54.** On June 19, 2023 Defendant Cross sent correspondence to Defendant Schroeder per the Board's request, stating that "…the referenced 1st amendment **will not have adverse actuarial impact** to the [UOPP]." *See* June 19, 2023 USI Letter, Exhibit 15 (emphasis supplied)

**55.** On June 21, 2023, the Board held a special meeting, *See* June 21, 2023 Special Agenda and Meeting minutes, Exhibits 16 and 17. The agenda did not reasonably describe the matters to be deliberated or acted upon during the public meeting and the Board deliberated and acted upon matters not listed on the agenda without following its bylaws or properly adopted rules and procedures. The Board's actions likewise failed to comply with all applicable laws. At this meeting, Defendant Caldwell "**reminded the Board and audience that the Mayor and Sheriff reached an**

**agreement on officer salary increases, which is conditioned upon the Board's adoption of an amendment capping UOPP growth at 3% per year**" (emphasis added).

**56.** A first reading of the proposed 2023 Amendment was held on June 26, 2023, at a regular meeting of the Knox County Retirement and Pension Board. *See* June 26, 2023 Agenda and executed Board meeting minutes, Exhibits 18 and 19. At this meeting, Commissioner Jay notified the audience that "after the last meeting, a Q&A document was put together based on the questions asked by the Board." A true and correct copy of the Q & A document is attached hereto as Exhibit 20.

**57.** Conspicuously, the Board's Q & A document, Exhibit 20, states the following:

> 5. Was 3% the original salary growth expectation?
>
> The documentation Officers were provided in 2007specifically included a 3% annual pay increase assumption. This documentation was the basis for an Officer's election to transfer to UOPP…
>
> *10. In several meetings, the Board considered a range of possible alternatives including*:
>
> -Modifying or eliminating the COLA
>
> -By referendum, propose Hard Freeze of UOPP to cease all further benefit accruals
>
> The recommendation is that some action needs to be taken to maintain and enhance fiscal soundness and stability and that the Amendment to impose a 3% cap on compensation growth is:
>
> (1) *what the Mayor and Sheriff agreed to* and is the basis on which Commission approved the budget; (2) preserves UOPP as a pension benefit while controlling its cost in line with original expectations; (3) does not reduce any UOPP benefit already earned as of June 30, 2023; and (4) can be administered.

See Exhibit 20. hereto. These actions violated the Charter and the UOPP plan documents and show that Board's failure to notify or make available information to all interested parties of the

financial effects of the 2023 amendment or the determination of the actuarial soundness of the Plan at a prior meeting. *See* June 26, 2023 Agenda and executed Board meeting minutes, Exhibits 18 and 19. Moreover, while the meeting agenda [Exhibit 18] reflects that the Report of Actuary Bob Cross would occur *before* the First Reading of the Amendment, the meeting minutes show that Defendant Cross elected to provide his actuary report *after* the First Reading of the Plan Amendment. See Exhibit 19. These meeting minutes also reflect that the Board approved the First Reading of the Plan Amendment without an actuarial valuation as the revised actuarial valuation was approved *after* the First Reading of the Plan Amendment. See Exhibit 19.

**58.** The Board called a special meeting for the second reading of the Amendment on June 29, 2023. The first Special Called Board Meeting Agenda stated that the meeting would occur on Thursday, June 29, 2023 at 11:30am in Room 575. *See* First Notice, Exhibit 20. Following this, a second Special Called Board Meeting Agenda was published stating that the second reading would take place in the Main Assembly Room, *See* Second Notice, Exhibit 21.

**59.** A second reading was held on June 29, 2023, at a special meeting of the Knox County Retirement and Pension Board. *See* June 29, 2023 Agenda and executed Board meeting minutes, Exhibits 23 and 24. The Board passed a resolution amending Article I, Section 1.19, of the UOPP to add subsection (j), which excluded from "Compensation" any incremental increase paid to a participant over a 3% per year increase in the base salary fixed by the Sheriff's Office. *See* Notice of 1st Amendment to the 2023 Restatement, Exhibit 20. The Resolution (Exhibit 25) reflects that the Amendment was adopted following public notice on June 4, June 11 and June 18, 2023 See Exhibits 12-14.

**60.** On August 10, 2023, the Board sent communication to all officers in the UOPP. *See* August 10, 2023 Comp Cap Communication, Exhibit 26. The Board's communications specifically states that the Board first "considered the agreement of the Mayer and the Sheriff regarding increases in Officer pay for the fiscal year 2024," and secondly, considered the "fiscal soundness and stability of the UOPP…"

**61.** Upon information and belief, subsequent agenda and meeting minutes of the Board demonstrate that the Board knew it improperly passed the 2023 amendment and violated applicable law. Subsequent meetings of the Board show that the Board took additional action on the 2023 Amendment after its alleged approval, without the required notice. For example, the September 25, 2023 meeting minutes reflect a "**UOPP Amendment Communication and SPD emailed to all officers on August 29, 2023**." See Exhibit **29**. These minutes reflect that Defendant Schroeder sent "a communication piece to Ms. Schlosshan and Ms. Allison Rogers regarding the UOPP amendment **implementing the 3% salary cap**, *which will be emailed to all officers in the Sheriff's office.*" See Exhibit **29**. The October 23, 2023 Agenda and Meeting Minutes, Exhibit **30**, show that Defendant "Schroeder informed the Board a decision needed to be made to decide if the **pending amendments** would provide for both STAR and UOPP to be eligible for MERP" (emphasis supplied). The November 20, 2023 Meeting Agenda and Minutes, Exhibit **31**, show Agenda Item No. 9, as the "First Reading of Plan Amendment and Restatement for the Uniformed Officers' Pension Plan." Once again, Defendant "Schroeder reviewed the proposed changes to UOPP. A motion was made by Commissioner Beeler to approve the First Reading of the Amendment and Restatement of Uniformed Officers Pension Plan. The motion was seconded by Commissioner Jay. All members present voted. The motion passed." See Exhibit **31**. The Board also addressed cost of living adjustments for Teachers, DB and UOPP Plans. The Agenda and

Meeting Minutes for December 18, 2023, Exhibit **32**, reflect as agenda item no. 7 "**Second Reading of the Plan Amendment and Restatement for the Uniformed Officer's Pension Plan**." These meeting minutes, Exhibit 32, reflect that Defendant Simon made a motion to approve on Second Reading the Amendment and Restatement of Uniformed Officers Pension Plan," which was "seconded by Commissioner Ward." All Board members present at the meeting voted and the motion passed. These actions by the Board and individual Defendants violated the Charter and the UOPP plan documents, as upon information and belief, the Board did not publish public notice during the required time period, nor did notify or make available information to all interested parties of the financial effects of the 2023 amendment or the determination of the actuarial soundness of the Plan at a prior meeting.

**62.** On February 26, 2024, the Board Meeting Minutes, Exhibit 33 state that :

> Ms. Schroeder explained that once the STAR 457 match was added, a payroll error occurred whereby employees' base pay and overtime were treated as pensionable. However, the plan document states that overtime is excluded from the definition of Compensation for STAR and UOPP participants both in STAR and UOPP and for purposes of the 457 Plan. Overtime is included in Compensation for Asset plan participants, both in the Asset Plan and for purposes of the 457 Plan. An option discussed in the Document Committee was making overtime non-pensionable in the Asset plan. Alternatively, if overtime was included in the definition of Compensation for STAR participants, there would be a cost to the County. Ms. Schroeder stated she would like to get the input of the offices affected, including the Sheriff. In response to questions from the Board, Ms. Trotto stated that no Board action is needed if the Board chooses to correct the error moving forward without plan amendment. She explained the time considerations for determining whether to amend the plans or to correct the error without amendment. After further discussion, Ms. Schroeder proposed the Board allow her 60 days to meet with the Sheriff and schedule a follow-up meeting with the Board for further discussion.

The Board meeting minutes also reflect that Defendant "Simon presented the proposed changes from USI. These changes included various **allocation changes for the closed** DB and Teacher's plans, **along with UOPP**" (emphasis supplied). Upon information and belief, the Board failed to

comply with the Charter, the UOPP and applicable as it failed to provide notice to all interested parties as required.

**63.** Even after the 2023 Amendment was allegedly passed, “Compensation” is still defined in Article I, Section 1.19 as “the total salary paid by the Employer to the Employee for services performed for the Employer that is currently includible in gross income […].” *See* January 1, 2024 Restatement of the Knox County Uniformed Officers Pension, Exhibit 5.

**64.** Under the terms of the UOPP, as amended by the 2023 Amendment, participants now receive benefits based on compensation that is less than the total salary paid by the Employer to the Employee for services performed for the Employer that is currently includible in gross income.

**65.** As late as 2025, Knox County payroll withheld UOPP contributions from participants’ longevity pay, in service bonuses, educational deferential pay and overtime from UOPP participants’ salaries. Upon information and belief, this practice continues in Knox County.

**66.** On February 18, 2026, counsel for Plaintiffs submitted an open records request to the Retirement Board. See Exhibit 34. Counsel for the Board stated that “clarification of the open records request was needed in order to respond. As a result, Plaintiffs made an amended open records request on March 2, 2026. See Exhibit **35.** As of the date of this Amended Complaint, the Board has not produced any responsive documents. Plaintiffs respectfully submit that limited discovery is also necessary for class action certification and will be fundamental in deciding whether to certify the class.

## IV. CLASS ACTION ALLEGATIONS

**67.** Plaintiff Ragon and Plaintiff Carpenter, as Class Representatives, bring this action on behalf of themselves and the following class of similarly situated persons:

> All regularly employed sworn officers of the Knox County Sheriff's Office who irrevocably elected to participate in the Plan on or before June 1, 2007, or were hired on or after June 1, 2007 and were last employed or re-hired before December 31, 2013, who were still employed by Knox County on June 29, 2023.

All class members have completed the requisite term of employment necessary to be entitled to pursuant to the terms of the UOPP.

**68.** The number of Class Members is over one hundred, and the Class is large enough that joinder of the individual members is impractical. The Class Members are geographically concentrated with Knox County.

**69.** There are common questions of law and fact that relate to and effect the Class. This includes whether the Board had authority to amend the UOPP and unilaterally terminate Class Members' vested pension benefits. Claims arise from the interpretation of a contract, containing the same contractual language applicable to the Class:

> "restorative payment" is a payment made to restore losses to a plan resulting from actions by a Fiduciary for which there is reasonable risk of liability for breach of a Fiduciary duty under applicable federal or state law, where Participants who are similarly situated are treated similarly with respect to the payments. Generally, payments are Restorative Payments only if the payments are made in order to restore some or all of the Plan's losses due to an action (or a failure to act) that creates a reasonable risk of liability for such a breach of Fiduciary duty (other than a breach of Fiduciary duty arising from failure to remit contributions to the plan). This includes payments to a plan made pursuant to a court-approved settlement, to restore losses to a qualified defined contribution plan on account of the breach of

> Fiduciary duty (other than a breach of Fiduciary duty arising from failure to remit contributions to the plan).

Article 1, Section 1.85 of the UOPP.

**70.** The relief sought is common to all Class Members set forth below.

**71.** The claims of the Class Representatives are typical of the claims of all Class Members, namely whether the Board had authority to amend the UOPP and unilaterally terminate Class Members' vested pension benefits. Class Representatives have not been treated differently from other Class Members, nor have the Class Representatives engaged in conduct that is identical to that of the Defendants.

**72.** There is no conflict between Class Representatives and any other Class Member with respect to this action.

**73.** The Class Representatives will fairly and adequately protect the interests of the Class Members.

**74.** Attorneys for the Class Representatives are experienced and capable in the field of labor law and have successfully litigated numerous cases involving uniformed law enforcement personnel.

**75.** The actions taken by Defendants in enacting Article I, Section 1.19(j) of the UOPP and the 2023 Amendment and following the improper amendment constitute a continuing breach of the Knox County Charter, the UOPP plan documents and applicable law, and causing ongoing impairment to the Plaintiffs' property rights.

**76.** This action is properly maintained by as a class action under Fed. R. Civ. Pro. 23(b)(3), as the common questions of law and fact described above predominate over any questions affecting only individual Class Members. Litigating separate actions by individual Class Members would establish incompatible standards of conduct for the Defendants and prevent Defendants

from being required by different courts to act inconsistently toward identically and similarly situated adversaries.

## V. CAUSES OF ACTION

**77.** Plaintiffs incorporate by reference all preceding paragraphs as though fully set forth.

### A. Federal Claims

**78.** Plaintiffs have identified cognizable property interest in their pension benefits under the UOPP contract documents.

#### 1. Contract Impairment/Breach

**79.** Plaintiffs been deprived of their property interests under the UOPP as the 2023 Amendment, which, as applied, reduced plaintiffs' disability retirement payments. This violates Article I, Section 10 of the Constitution of the United States, which provides in part: "No state shall ... pass any … law impairing the obligations of contracts." U.S. Const. art. I, § 10.

**80.** Defendants' actions, in capping compensation increases to 3% each year, materially altered the terms of the UOPP. Defendants, as ministerial officials, lacked the statutory authority to forbid or avoid referendums and circumvent applicable law, the Knox County Charter and the terms of the UOPP.

**81.** The Board may only modify, alter or amend UOPP, in whole or in part, by written instrument, duly executed, that is in accordance with the provisions of both the

Knox County Charter and the UOPP. The Board failed to amend the UOPP in compliance with the Knox County Charter or the UOPP, failed to place the amendment as a referendum and violated applicable law. Likewise, the Board failed to disclose or make the correct actuarial valuations, formulas, funding determinations of the Amendment's effect on the soundness of the System's design of benefits as well as its effect on the cost of the Plan to all interested parties as required.

**82.** Defendants breached the UOPP contract documents by passing an amendment in contradiction to Article VII, § 7.05 the County Charter, the terms of previous charter amendments,

**83.** Defendants' actions have unconstitutionally impaired Plaintiffs' pension contract rights, violating the *Pennsylvania* Rule as well as other applicable laws.

**84.** The impairment was not reasonable or necessary and subserved important public purposes.

**2. Retrospectivity**

**85.** The 2023 Amendment is impermissibly retroactive as it attaches new legal consequences to events completed before its enactment, including the lawful adoption and creation of a defined benefit plan to provide pension benefits for the participating officers, which came into effect on June 1, 2007, as well as the 2006 and 2012 Charter Amendment.

**86.** The 2023 Amendment is retroactively applied to the Plaintiffs, in violation of the County Charter Article VII, §7.04(H) providing that "all benefits payable to participants, retired participants, survivors, beneficiaries or otherwise, as lawfully adopted in the provisions of the system, **shall** continue unimpaired…" (Emphasis added).

**87.** Article VII, Section 7.04(E) of the Charter specifically states that the UOPP are actuarially sound and actuarially funded from *the date of their creation*. *See* Exhibits 1 and 3.

**3. Regulatory Taking/Coercion**

**88.** The Fifth Amendment prohibits the government from taking private property for public use without just compensation.

**89.** The 2023 Amendment is a regulatory appropriation of Plaintiffs' pension benefits without just compensation, in which the Board exceeded its authority and the referenda results of November 6, 2012.

**90.** Sheriff Spangler and Defendants Jacobs and Caldwell coerced the Board and its staff to abrogate Plaintiffs' propriety rights under the UOPP. The Board's meeting minutes reflect that the UOPP was actuarially stable prior to the 2023 Amendment, yet the Board still took action under a pretext of actuarial soundness as demonstrated by Defendant Caldwell reminding the Board "and audience that the Mayor and Sheriff reached an agreement on officer salary increases, which is conditioned upon the Board's adoption of an amendment capping UOPP growth at 3% per year." The referenced agreement between Sheriff Spangler and Defendants Jacobs and Caldwell were made in secret and without notice to the Plaintiffs.

**91.** The actions of the Board are ultra vires as the Amendment was adopted without the requisite formalities in violation of the Charter. The Board was not permitted to amend the UOPP by the passing of a Resolution.

**4. Denial of Due Process**

**92.** The Due Process Clause of the Fifth Amendment guarantees a full and fair hearing prior to deprivation of Plaintiffs cognizable property interest. Due process requires the Board process requires local governments to employ fair procedures when they deprive a person of her constitutionally protected interest in property. The requirements of minimum due process include proper notice, which has been defined as notice reasonably calculated under all the circumstances to apprise interested parties of the claims of the opposing parties. See also Exhibit 2 hereto.

**93.** Knox County may be held liable for the actions of the Board. Sheriff Spangler and Mayor Jacobs were the driving force behind the deprivation of Plaintiffs' rights. where the Board, Mayor Jacobs and Sheriff Spangler. Sheriff Spangler and Mayor Jacobs met in secret, outside the purview of the public, without notice, and arbitrarily reached an agreement regarding pay raises funded by the depriving Plaintiffs of their retirement benefits.

**94.** Upon information and belief Mayor Jacobs, Sheriff Spangler and the Board's edicts and/or acts fairly represent an official policy or custom inflicting Plaintiffs' injuries. Upon information and belief, Mayor Jacobs and Sheriff Spangler, along with other individual Defendants had cloistered communications with one another addressing issues of public concern, including, but not limited to, taxes, county budgeting, public employee and uniformed officer salaries, compensation and retirement benefits pursuant to their official duties. These Defendants did not engage in protected speech as these secret communications were as government agents.[4]

**95.** Prior to June 2, 2023, Defendants Spangler and Jacobs conducted secret meetings without notice, unknown to the public, affecting the UOPP's funding

**96.** Defendant Schroeder reported at the Board's May 23, 2023 meeting that, at the special called Board meeting held May 12, 2023, the Board asked to be provided with additional information on the different options to be explored to maintain or enhance the fiscal stability of the UOPP. *See* May 22, 2023 executed meeting minutes, Exhibit 11. Moreover, Defendant Schroeder also stated that the legal team, Mr. Schlosshan and herself "met with the Sheriff on May 18th and briefed him on the date and how the pension is funded." The public was not provided notice of this meeting nor are there recorded meeting minutes of any meetings with the Sheriff with other Defendants in which legal counsel may or may not have been present. See May 22, 2023 executed meeting minutes, Exhibit 11. The Defendants violated Plaintiffs' procedural due process by failing to provide adequate public notice under the totality of the circumstances, as the Board's regular and special meeting notices failed to mention an important item of business in the public notice of a meeting can render that notice inadequate. The actions taken by the Board based on the defective notices

**97.** Here, the agendas published in advance of the May 12, 2023 special meeting and the May 22, 2023 meeting (Exhibits 8,9 11), fail to mention that the Board would consider UOPP Cost and Options resulting from the secret meetings between Defendants Spangler, Jacobs, Caldwell, Schroeder and Schlosshan. The notices fails to mention that the Board was considering changing the UOPP's funding and options based on an actuarial analysis, and notice was not given to all interested parties. The May 12, 2023 Notice is devoid of the presentations to the Board that were already being prepared, being:

---

[4]See Morris v. City of Ridgetop, 2025 U.S. Dist. LEXIS 58747 (M.D. Tenn. March 28, 2025); render the Board's actions null and void. Board members are required "to act impartially… as Board members are… participants in the Plans…" See March 27, 2023 meeting minutes, Exhibit 8; 9-14; 16-25; see also Long v. City of Coopertown, 801 F. Supp. 2d 674, 683 (M.D. Tenn. July 5, 2011).

(1) USI's "Review of Benefits At Retirement," (2) USI's Review of 20-Year Projections" and (3) "UOPP Cost and Options." *See* May 12, 2023 executed meeting minutes, Exhibit 10.

**98.** Upon information and belief, these presentations were not provided to members of the public who attended this meeting. The failure to mention important items of business in the public notice of these meetings renders that notice inadequate, as the funding and maintainability of the UOPP are issues of "pervasive importance," involving limited taxpayer dollars and vested property rights.

**99.** The Board's Notices, when they were provided, were not posted in a location where a member of the community could become aware of such notice. The contents of the Board's notices failed to reasonably describe the purpose of the meeting or the action proposed to be taken. Finally, the Board's notices were not posted at a time sufficiently in advance of the actual meeting in order to give the Plaintiffs both an opportunity to become aware of and to attend the meeting. These actions continued after the June 29, 2023 Board meeting as set forth herein.

**100.** In this case, Defendants Spangler and Jacobs, along with various Board Commissioners and Members, disregarded applicable law and rules which resulted in a procedure which in itself impinged upon the due process rights of the Plaintiffs.

### 5. First Amendment Right to Petition

**101.** The right to petition is set forth in the Petition Clause of the First Amendment. See U.S. Const. amend 1. Defendants may not deny Plaintiffs' retirement benefits on a basis that infringes on Plaintiffs' constitutionally protected interests, including constitutionally protected speech or associations.

**102.** Plaintiffs are associated to each other as UOPP participants hired on or before December 31, 2014, and employed by Knox County as uniformed officers on June 29, 2023. Plaintiffs are not participants in any other retirement plans. Per Article VII, § 7.04(E)(H) of the Charter, the Plaintiffs were denied the opportunity to oppose and petition the Board and Defendants Spangler and Jacobs from impairing their pension benefits. See Exhibits 1, 2 and 3.

**103.** The Defendants, jointly and severally, upon information and belief, without notice or transparency, as required by the Knox County Charter, the UOPP plan documents continue to deny the Plaintiffs their right to speak and oppose Defendant Spangler's proposed 30% pay increase, secret meetings with the Mayor, as well as with the Board, that was funded by the Defendants' UOPP cap. Plaintiffs were not provided meaningful notice to oppose the illegal actions of the Defendants.

**B. <u>State Claims</u>**

**104.** The actions of the Board were beyond its power to make, and in passing the 2023 Amendment, the Board alienated and diverted Plaintiffs' retirement benefits breaching their fiduciary duties under the UOPP.

**105.** The administrative findings, inferences, conclusions and/or decisions of the Board in this matter violate the Plaintiffs' United States and Tennessee constitutional and statutory rights. The Board's administrative findings, inferences, conclusions and/or decisions exceeded the authority of the Board and made upon unlawful procedure. The Board's administrative findings, inferences, conclusions and/or decisions are arbitrary, capricious and/or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

### 1. Breach of Fiduciary Duties – Loyalty, Care, Good Faith, and Disclosure

**106.** Article X, Section 10.02 states that no benefit which shall be payable out of the Fund to any person:

> …**shall be subject** in any manner to anticipation, alienation, sale, transfer, assignment, pledge, encumbrance, or charge, and any attempt to anticipate, alienate, sell, transfer, assign, pledge, encumber, or charge the same shall be void; and no such benefit shall in any manner be liable for, or subject to, the debts, contracts, liabilities, engagements, or torts of any such person, nor shall it be subject to attachment or legal process for or against such person, and the same shall not be recognized by the Trustee, except to such extent as may be required by law.

**107.** Article 1, Section 1.48 of the UOPP defines fiduciary as

> as any person who (a) exercises any discretionary authority or discretionary control respecting management of the Plan or exercises any authority or control respecting management or disposition of its assets, (b) renders investment advice for a fee or other compensation, direct or indirect, with respect to any monies or other property of the Plan or has any authority or responsibility to do so, or (c) has any discretionary authority or discretionary responsibility in the administration of the Plan.

**108.** Tenn. Code Ann. § 8-30-331 declares that civil service employees who have successfully completed their probationary period have a property right to their positions. Such a property right gives rise to a constitutional right to due process, which must be satisfied before the state may validly deprive the employee of his employment.

**109.** Defendants breached their fiduciary duties owed to the Plaintiffs by pledging Plaintiffs' retirement benefits to the Sheriff for future pay raises, thereby violating Plaintiffs' rights and applicable law.

### 2. Violation of Open Meetings Act Tenn. Code Ann. § 8-44-101 *et seq* and UOPP Article VII Notice Requirements

**110.** Tennessee Code Ann. § 8-44-101 provides that the formation of public policy and decisions is public business and shall not be conducted in secret. Section 8-44-103 requires the public body to give adequate notice of regular and special meetings.

**111.** The Board's publication notices of the regular and special meetings before the first and second readings of the 2023 Amendment the Plan were inadequate based on the circumstances and did not fairly inform nor reasonably describe the purpose of the meeting or the action proposed to be taken.

**112.** The Board failed to disclose the actuarial determination of the Amendment's effect on the soundness of the system's design of benefits as well as its effect on the cost of the Plan in a prior public meeting and place notice of such a hearing shall be published one day in each of three consecutive weeks, commencing at least 21 days prior to the date of the first reading as required by Article VII, § 7.01(c) of the UOPP, Plaintiffs were denied the opportunity to review the items presented by the Board and its fiduciaries, or provide any meaningful response.

## VI. RELIEF REQUESTED

**WHEREFORE**, Plaintiffs respectfully request that this Court:

A. Certify this action as a class action, using the Class definition identified above; appoint Winston Ragon and Jeb Carpenter as Class Representatives;

B. Authorize and appoint L. Scott Miller and Lara E. Gill of L.S. Miller Law Firm, PLLC as Class Action Counsel following the filing of Class Action Counsel Declarations;

C. Order expedited discovery and a briefing schedule as may be necessary for class action certification;

D. Authorize leave of court to take expedited discovery for the limited purpose of obtaining the identities of John and Jane Doe Defendants 1-5 as set forth herein;

E. Upon completion of any expedited discovery, permit Plaintiffs to amend this Class Action Complaint as may be necessary;

F. Order Defendants to reinstate the pension benefits prior to the 2023 Amendment for Class Members who are eligible as provided under the terms of the UOPP;

G. As necessary, award to the Class Representatives and the Class Members monetary damages, restitution or other monetary relief, and/or other equitable relief such as reinstatement or reformation, as necessary, to restore them to the position which they would have been but for Defendants' contractual violations;

H. Award Plaintiffs their reasonable attorneys' fees and costs incurred in this action;

I. Award Plaintiffs any and all equitable relief to which they are entitled, and

J. Grant such further relief as may be deemed necessary and proper.

THIS, the 16th day of March, 2026.

Respectfully submitted,

**WINSTON RAGON, JEB CARPENTER ON BEHALF OF THEMSELVES AND ALL OTHER PERSONS SIMILARLY SITUATED**

By:__ L. Scott Miller ___
L. Scott Miller (TN BPR. No. 034102)

By:__ Lara E. Gill ___
Lara E. Gill (TN BPR No.026103)
**L.S. MILLER LAW FIRM, PLLC**
415 West Central Avenue, Suite 1
LaFollette, Tennessee 37766
(865) 332.0922 telephone
lsmiller@lsmlaw.com
lgill@lsmlaw.com

## CERTIFICATE OF SERVICE

I, L. Scott Miller, one of the attorneys for the Plaintiffs, do hereby certify that I have this day delivered a true and correct copy of the foregoing First Amended Complaint to the following:

Brigid M Carpenter
Baker Donelson
1600 West End Avenue
Suite 2000
Nashville, TN 37203
615-726-7341
bcarpenter@bakerdonelson.com
Attorney for Defendant Bob Cross

Stephanie D Coleman
Owings, Wilson & Coleman
800 Riverview Tower
900 South Gay Street
Knoxville, TN 37902-1800
865-521-3017
scoleman@robertsonoverbey.com
Attorney for the Knox County Retirement Board, Chris Simons, Jennifer Schroeder, Jim Snowden, Matthew Schlosshan, Savannah Willett and Zac Fullerton

Jessica Jernigan-Johnson
Rachel K. Harrison
Office of County Attorney (Knox)
400 Main Street
Suite 612, City-County Building
Knoxville, TN 37902-2405
865-215-2327
jessica.johnson@knoxcounty.org
rachel.harrison@knoxcounty.org
Attorney for Chris Caldwell, Mayor Glenn Jacobs and Knox County, Tennessee

John E Owings
James Douglas Overbey
Gavin Andrew Smelcer
Owings, Wilson & Coleman
900 South Gay Street
Suite 800
Knoxville, TN 37902-1800

865-521-3013
jeowings@owclaw.com
jdoverbey@owclaw.com
gsmelcer@owclaw.com
Attorneys for Knox County Pension and Retirement Board,
Chris Simons, Jennifer Schroeder, Jim Snowden, Matthew
Schlosshan, Savannah Willett, Zac Fullerton, Chris Caldwell
Damon Rawls, Mayor Glenn Jacobs, Kyle Ward, Larsen Jay,
Richie Beeler, Shane Jackson and Terry Hill